UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBERT HENRY SAMUEL
McKEEL,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

Case No. 2:14-cv-12815
District Judge Gershwin A. Drain
Magistrate Judge Anthony P. Patti

## RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 14) AND TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 15)

I.      **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment, **DENY** Defendant's motion for summary judgment, **REVERSE** the

Commisioner's decision, and **REMAND** this case to the Commissioner and the

ALJ under Sentence Four of § 405(g) for further consideration consistent with the

report below.

## II.    REPORT

Plaintiff, Albert Henry Samuel McKeel, brings this action under 42 U.S.C.

§§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of

Social Security  ("Commissioner") denying his applications for social security

disability insurance benefits and supplemental security income.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 14), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 15), Plaintiff's reply (DE 16), and the administrative record (DE 12).

### A.    Background

Plaintiff protectively filed his application for benefits on November 14, 2011, alleging that he has been disabled since August 5, 2011, at age 51.  (R. at 171-174.)  Plaintiff alleges disability as a result of obesity, chronic pain, end stage patellofemoral arthritis, left knee, right total knee arthroplasty, spinal disc disease at L3-S1, and left ankle pain.  (DE 14 at 2.)  Plaintiff's application was denied initially and upon reconsideration.  Plaintiff then sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Lawrence C. Blatnik held a hearing on February 28, 2013 and subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12-58.)   On May 30, 2014, the Appeals Council denied Plaintiff's request for review.  (R. at 1-3.)  ALJ Blatnik's decision became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

### B.   Plaintiff's Medical History

Plaintiff presented to the St. Joseph Mercy Hospital emergency department on October 19, 2010 with symptoms of knee pain that worsened with movement. (R. at 266.)  X-ray findings revealed no fracture and no significant knee joint effusion, but did show moderate patellofemoral compartment degenerative changes, with mild degenerative changes in the medial and lateral compartments. (R. at 267.)  Plaintiff was released on the same day with a prescription for ibuprofen and acetaminophen, and instructions to follow up with an orthopedic surgeon within three to four days.  (R. at 270.)  On February 10, 2011, another x-ray revealed tricompartmental degenerative change manifesting as spur formation, with some narrowing of the patellofemoral space.  (R. at 265.)

Plaintiff began treatment at the Michigan Orthopedic Center on April 27, 2011.  He was initially seen by Kristopher J. Aalderink, M.D., who described Plaintiff as a "morbidly obese gentleman in obvious discomfort."  (R. at 280.)  He diagnosed Plaintiff with end stage arthritis with significant and advanced arthritis within the femorotibial joint space medially and laterally of the knees.  (Id.)  Dr. Aalderink noted that the only treatment option for Plaintiff was total knee replacement.  (Id.)  Plaintiff was seen by Mark A. Kelley, M.D., on May 3, 2011 and May 19, 2011.  (R. at 277 and 278.)   On August 8, 2011, Dr. Kelley reported that Plaintiff had mild to moderate effusion and significant crepitation in both

3

knees.  (R. at 316.)  On November 11, 2011, Dr. Kelley noted that Plaintiff was having a hard time with both knees and was "unable to work."  (R. at 315.)  Dr. Kelley again saw Plaintiff on November 28, 2011 for his preoperative appointment and performed a right total knee arthroplasty on February 23, 2012.  (R. at 304-306.)  Following his right total knee arthroplasty, Plaintiff attended physical therapy at the Chelsea Community Hospital.  (R. at 298-299.)  He was discharged from physical therapy on May 3, 2012, with a note that he was walking "community distances" without an assistive device.  (R. at 298.)  Plaintiff's right knee appeared to be doing well post-surgery.

Dr. Kelley examined Plaintiff on August 27, 2012.  (R. at 295.)  According to Dr. Kelley, Plaintiff's right knee had "given out a little bit."  (Id.)  Additionally, Plaintiff's left knee was painful and restricted his tolerance for exercise.  Dr. Kelley reported that Plaintiff had good strength and mild discomfort in the patellofemoral joint and full range of motion.  Dr. Kelley recommended exercise and continued weight loss, and gave Plaintiff a left knee injection.  (R. at 295-96.)  Dr. Kelley completed a Medical Source Statement for Plaintiff on February 15, 2013.  (R. at 360-363.)  In the Statement, he indicated that Plaintiff was diagnosed with bilateral end stage osteoarthritis, post right total knee arthroplasty, which caused fatigue, pain, and balance issues.  (R. at 360.)  Dr. Kelley also reported that Plaintiff was obese and had lost forty pounds recently.  According to Dr. Kelley,

Plaintiff's pain was constant, he could walk less than one city block, could sit for no more than thirty minutes, could stand for no more than five minutes, and needs more than eight periods of walking during an eight hour workday.  (R. at 361.)  In addition, Dr. Kelley opined that plaintiff must lie down twice for thirty minutes apiece during an eight hour workday, and would need unscheduled breaks every two hours.  (R. at 362.)

On September 11, 2012, Plaintiff began treatment with Jacob Tazzi, D.C. of Albion Chiropractic.  (R. at 289.)  Plaintiff reported that his knee problems began after walking for about four miles.  Plaintiff next sought treatment from Shahzad Shaikh, M.D. of the Center for Family Health, on October 12, 2012.  (R. at 337-339.)  Dr. Shaikh indicated that Plaintiff's left knee revealed joint crepitus and that his arthritis had a severity level of three.  (R. at 337.)  Dr. Shaikh saw Plaintiff again on November 20, 2012 and put his arthritis severity level at five.  (R. at 327.)  Plaintiff's weight on that day was 232.60, putting his body mass index at 30.90.  (R. at 328.)  Dr. Shaikh referred Plaintiff to orthopedics.

On January 13, 2013, Plaintiff saw Philip Troy Henning, D.O., at the University of Michigan Health System.  (R. at 317-326.)  Upon examination, Dr. Henning found that Plaintiff had 5/5 muscle strength in his lower extremities.  (R. at 319.)  In addition, Dr. Henning noted that Plaintiff exercised five days per week by weightlifting, biking, and walking.  (Id.)  Dr. Henning ordered bilateral hip ex-

rays, a left knee hinged brace, and referred Plaintiff to physical therapy.  (R. at 320.)  Plaintiff attended physical therapy at ProMedica from January 2013 through February 2013.  His functional strength was rated as poor and it was noted that Plaintiff entered the clinic by using a cane.  (R. at 350.)  In February 2013, it was noted that Plaintiff has improved in pain, strength and balance, but his functional strength was still rated as poor and he was still having issues with pain, decreased flexibility, decreased strength, and decreased balance.  (R. at 343.)

### C.   Hearing Testimony

#### 1.   Plaintiff's Testimony

Plaintiff testified that, at the time of the hearing, he was 51 years old, six feet two inches tall, and weight 240 pounds.  (R. at 29.)  He has a high school education, and took some general education classes at community college.  (R. at 31.)  Plaintiff testified that he worked in commercial cleaning for the past 30 years, in addition to some work as a retail cashier at service stations.  (R. at 32-33.)  According to Plaintiff, his knee trouble began when he was a teenager, but became worse in October of 2010, when is left knee "popped."  (R. at 36.)  A few months later, on New Year's Eve, Plaintiff experienced a similar sensation in his right knee and noted that it had been "downhill from there."  (R. at 36.)  He testified that he had to leave his cleaning job because it involved some heavy lifting and it was "getting too painful."  (R. at 33-34.)

6

Plaintiff testified that he has trouble with his lower back, arthritis in both hips and knees, and tingling in his left hand, but that his worst pain is in his right knee. (R. at 37 and 41.) He describes his knee pain as constant and averred that it has not gotten better or worse since before his 2012 surgery. (R. at 38.) According to Plaintiff, he has four "bad days" per week. (R. at 49.) On his bad days, Plaintiff stays in bed most of the time because of the pain. (Id.) Plaintiff testified that he can lift no more than ten pounds, cannot stoop or squat, and can climb stairs with some difficulty. (R. at 40.) Plaintiff testified that he could "probably walk less than a city block." (R. at 39.)

Plaintiff underwent a right knee replacement in February 2012, but noted that his knee remained painful and unstable. (R. at 34-35.) As a result, he began attending physical therapy about a month before the hearing, but testified that he did not believe the three day per week sessions were helping. (R. at 35-36.) Plaintiff averred that he was not on pain medication, but used a cane prescribed by Dr. Kelley for stability and security. (R. at 38.) Plaintiff testified that he does not take "strong medication" for pain because he had trouble with drugs in his past, but has been clean and sober since 1995. (R. at 42 and 49.) Instead, he deals with the pain by lying on the couch or bed, elevating his legs, and icing his knees three times per day. (R. at 39-40.)

Since his knee surgery, Plaintiff has lost sixty pounds, but remains a one-pack-per-day smoker. (R. at 41-42 and 48.) He lives with his nine year old daughter and recently moved into his ex-wife's home. (R. at 30 and 43.) He has a driver's license, but no vehicle and therefore does not drive. (R. at 30.) Plaintiff testified that he takes public transportation to get to the grocery store every two weeks. (R. at 31 and 45.) His health insurance provides transportation to his medical appointments. (R. at 31.) Although Plaintiff has trouble sleeping due to the pain, he is able to take care of his own personal grooming and light housework. (R. at 42-44.) In addition, Plaintiff testified that he uses a computer a few times a week for internet searches and went fishing about four times in the past year. (R. at 45-46.)

### 2.    Vocational Expert Testimony

Sandra Steele testified as the Vocational Expert ("VE") at the February 28, 2013 administrative hearing. (R. at 49-57.) The ALJ posed a series of hypotheticals to the VE. In the first hypothetical, he asked the VE to determine if there was any work in the regional or national economy that a hypothetical person of Plaintiff's age, educational background, and work experience could perform with the following limitations:

> [A]ssume we have an individual that cannot lift or carry more than 20 pounds occasionally and 10 pounds frequently. Let's assume for right now the individual could sit, stand or walk all for at least six hours in

an eight-hour workday.  Oh, could not do any climbing of ladders, ropes or scaffolds; no kneeling, crawling or squatting.

He would be limited to only occasional climbing of ramps or stairs, as well as only occasional crouching; frequent balancing and stooping.

(R. at 52.)   Based on this hypothetical, the VE testified that such restrictions were consistent with Plaintiff's past work as a retail cashier at service stations.  (Id.)

In the second hypothetical, the ALJ asked the VE to determine if the above hypothetical individual could perform Plaintiff's past relevant work with the limitation that the individual "would have the need for a sit/stand option that enabled the individual to change position every 20 to 30 minutes."  (R. at 52-53.) The VE testified that about 25% of retail cashier positions (8,000 out of 33,000 in total) allow "an ability to sit and stand pretty frequently."  (R. at 53.)  The ALJ then asked if there were other jobs in the state and national economy that the second hypothetical individual could perform.  (Id.)  The VE replied that the hypothetical individual could perform as an assembler, with about 4,500 full-time positions, a packer, with about 3,500 positions, and a visual inspector, with about 1,600 positions in the Lower Peninsula region.  (R. at 53-54.)  The VE testified that all of the positions have a Specific Vocational Preparation ("SVP") level of 2, meaning they are unskilled positions.

Finally, the ALJ provided the VE with Exhibit 8F (R. 360-363), which is Dr. Kelley's medical source statement.  (R. at 54.)  The ALJ asked if a hypothetical

individual with the types of restrictions described by Dr. Kelly would be able to perform any jobs in the local or national economy.  The VE concluded that the RFC opined by Dr. Kelley would be work preclusive.  The VE further testified that, individually, the requirements for unscheduled breaks every two hours, the need to lie down for thirty minutes twice per day, and more than three absences per month, would preclude the hypothetical individual from competitive employment.  (R. at 54-55.)  Finally, in answer to a question posed by Plaintiff's counsel, the VE testified that employees are typically required to stay on task about 85% of the workday, excluding breaks and lunch.  (R. at 57.)

### D.  THE ADMINISTRATIVE DECISION

On March 15, 2013, the ALJ issued his decision.  (R. at 12-19.)  At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step terminates the  review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

in substantially gainful activity since August 5, 2011.  (R. at 14.)  At step two, the

ALJ found that Plaintiff had the following severe impairments:

osteoarthritis/degenerative joint disease of the bilateral knees, status post right knee

replacement; osteoarthritis, bilateral hips; and obesity.  (R. at 14.)  The ALJ further

found that Plaintiff's lower back pain was not a severe impairment.  (R. at 15.)

At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 15.)

At step four of the sequential process, the ALJ evaluated Plaintiff's residual

functional capacity ("RFC")[2] and determined that Plaintiff can perform light work,

with the following limitations:

> He can lift or carry a maximum of 20 pounds occasionally and 10
> pounds frequently.  In an eight hour workday, the claimant can walk
> or stand for at least six hours and sit for at least six hours.  He can
> never climb ladders, scaffolds, or ropes.  The claimant can only
> occasionally crouch or climb ramps or stairs.  He can frequently
> balance or stoop.  The claimant can never kneel, crawl, or squat.

---

5.   Considering the claimant's age, education, past work experience, and
     residual functional capacity, can the claimant perform other work
     available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th
Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th
Cir. 2002).

(R. at 16.)  In reaching this determination, the ALJ gave "little weight" to the opinion of Dr. Kelley because it was not supported by Dr. Kelley's reports or by the record as a whole.  (R. at 17.)

Relying on the VE's testimony, the ALJ determined that Plaintiff was able to perform his past relevant work as a retail cashier.  (R. at 17.)  In addition, the ALJ noted that there are other jobs in the national economy that Plaintiff is able to perform, including assembler, packer, and visual inspector.  (R. at 18.)   He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 19.)

### E.   STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

    Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.  ANALYSIS

### 1.    Evidence Submitted Subsequent to the ALJ's Decision

As a preliminary matter, for the purposes of this Report and Recommendation, the Court will not consider Exhibit 9F (R. at 364-369), which contains treatment records from Michigan Rehabilitation Services from May 7, 2013 through August 6, 2013.  These documents were supplemented at the Appeals Council stage; however, the Appeals Council declined to review Plaintiff's application for disability insurance benefits on the merits.  This Court, therefore, cannot consider the new evidence for the purposes of determining whether remand is appropriate under Sentence Four of 42 U.S.C. § 405(g).  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (concluding that "where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision.").

I also do not recommend a remand under Sentence Six based on a finding that the evidence is new and material.  *See id.* (noting that the district court can "remand the case for further administrative proceedings in light of the [new] evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding.").  In support of such

14

a proposition, Plaintiff merely notes that such a remand is appropriate where "the claimant had submitted new and material evidence," but does not indicate how the evidence at issue is either new or material.  Plaintiff has met his burden that the records are new, because they are dated from May 7, 2013 through August 6, 2013, well after the February 28, 2013 hearing and the ALJ's March 15, 2013 opinion. *See St. v. Comm'r of Soc. Sec.*, 390 F. Supp. 2d 630, 640-42 (E.D. Mich. 2005) (concluding that Plaintiff had shown good cause for failing to submit the records until after the ALJ's decision where the records were created well after the decision was issued).

Plaintiff does not meet his burden of materiality.  In order to do so, Plaintiff must demonstrate that "there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (citing *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F. 2d 709, 711 (6th Cir. 1988)).  In the instant case, the new records do not involve a medical diagnosis or further medical evidence relating to Plaintiff's symptoms. Instead, they contain a letter from the Department of Human Services, Michigan Rehabilitation Services, indicating that Plaintiff's case is being closed "because of the significant barriers to employment presented by your disability."  (R. at 365.) Such a determination is reserved to the Commissioner, and is not entitled to any special significance.  20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506,

513-14 (6th Cir. 2007) (noting that new evidence is material when it "would likely change the Commisioner's decision," and "where the evidence would not change the ALJ's decision . . . remand for further consideration is not required."). Nevertheless, if the Court agrees with the following recommendation to remand the case under Sentence Four for other reasons, the ALJ may properly consider the additional evidence on remand. *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 175 (6th Cir. 1994).

### 2.    Plaintiff's Statements of Error

In his motion for summary judgment, Plaintiff asserts three statements of error. First, he contends that the ALJ improperly afforded less weight to the opinion of Dr. Mark Kelley, Plaintiff's treating orthopedist. Second, Plaintiff posits that the ALJ erred in his conclusion that Plaintiff's medical impairments failed to meet the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically Listings 1.02 and 1.03. Finally, Plaintiff argues that the ALJ erred in failing to consider Plaintiff's severe impairment of obesity when assessing his RFC. The Commissioner opposes Plaintiff's motion, asserting that she is entitled to a grant of summary judgment because substantial evidence supports the ALJ's conclusions. The Undersigned will first address Plaintiff's Listing argument, followed by his argument that the ALJ failed to consider his

obesity.  Finally, I will address Plaintiff's argument that the ALJ failed to afford proper weight to the opinion evidence.

### a.    Failure to Consider Listings 1.02 and 1.03

In the instant case, the ALJ found that Plaintiff has severe impairments of: osteoarthritis/degenerative joint disease of the bilateral knees, status post right knee replacement; osteoarthritis, bilateral hips; and obesity.  (R. at 14.)  He then went on to step three to conclude that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity" of any of the listed impairments.  (Id.)  Plaintiff now argues that the ALJ's conclusion that he did not meet the criteria for Listing 1.02 and/or 1.03, along with his failure to articulate his reasoning, constitutes legal error.  Defendant contends that the ALJ was not required to articulate his reasoning or discuss the relevant Listings because both require Plaintiff to show ineffective ambulation.  According to Defendant, the record contains substantial evidence that Plaintiff can ambulate effectively.

Plaintiff bears the burden of proving that his impairments meet or medically equal a particular listing.  *See Buress v. Sec'y of Health & Hum. Serv's*, 835 F.2d 139, 140 (6th Cir. 1987).  The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."

20 C.F.R. § 404.1525(a).  "A claimant must satisfy all of the criteria to meet the listing." *Rabbers*, 582 F.3d at 653.  Moreover, all of the criteria must be met concurrently for a period of twelve continuous months.  *See* 20 C.F.R. §404.1525(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.00D ("[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation").

"An ALJ need not discuss every piece of evidence in the record for his [or her] decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 6661, 665 (6th Cir. 2004).  However, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (6th Cir. 2001). Instead, the ruling must "clearly articulate the rationale underlying the decision" in order to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428, at *3 (6th Cir. 1999).  The Court is not limited to reviewing the findings at step three, and can look to the entirety of the ALJ's decision to determine if his or her reasons have been clearly articulated.  *See, e.g., Harvey v. Comm'r of Soc. Sec.*, No. 14-cv-10614, 2014 WL 5465531, at *4 n. 1 (E.D. Mich. Oct. 28, 2014).

In the instant case, the entirety of the ALJ's step three findings is as follows: "The claimant's impairments do not meet the criteria of Listing 1.02 or any other

listing." (R. at 15.) The ALJ provides little additional analysis, and does not

address Listing 1.03 at all. Defendant correctly notes that the regulations do not

"require the ALJ to address every listing." *Sheeks v. Comm'r of Soc. Sec.*, 544 F.

App'x 639, 641 (6th Cir. 2013). "If, however, the record 'raise[s] a substantial

question as to whether [the claimant] could qualify as disabled under a listing, the

ALJ should discuss that listing.'" *Id.* (quoting *Abbott v. Sullivan*, 905 F.2d 918,

925 (6th Cir. 1990)).

Applying the foregoing, I must determine whether the record raises a

substantial question as to whether Plaintiff could qualify as disabled under Listings

1.02 and/or 1.03.

In order to be found disabled under Listing 1.02, Plaintiff must demonstrate

the following:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized
> by gross anatomical deformity (e.g., subluxation, contracture, bony or
> fibrous ankylosis, instability) and chronic joint pain and stiffness with
> signs of limitation of motion or other abnormal motion of the affected
> joint(s), and findings on appropriate medically acceptable imaging of
> joint space narrowing, bony destruction, or ankylosis of the affected
> joint(s). With:
>
>> A. Involvement of one major peripheral weight-bearing joint
>> (i.e., hip, knee, or ankle), resulting in inability to ambulate
>> effectively, as defined in 1.00B2b;
>
> or
>
>> B. Involvement of one major peripheral joint in each upper
>> extremity    (i.e., shoulder, elbow, or wrist-hand), resulting in
>> inability to perform fine and gross movements effectively, as
>> defined in 1.00B2c.

19

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02.  Somewhat similarly, to be found disabled under Listing 1.03, Plaintiff must demonstrate the following:

> 1.03 Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.03.  Here, the ALJ notes that the "medical record establishes the claimant has osteoarthritis/degenerative joint disease of the bilateral knees, *status post right knee replacement*."  (R. at 17 (emphasis added).)  However, the ALJ did not discuss Listing 1.03 at all, despite Plaintiff's testimony that his symptoms had not improved following his knee surgery.

Both of the relevant Listings require a showing of inability to ambulate effectively, which is defined in the Regulations as:

> [A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00.  In the instant case, there is conflicting evidence in the record regarding Plaintiff's ability to ambulate effectively.  Dr. Kelley prescribed Plaintiff a cane, which he uses for "stability,"

20

although there is no indication that the case limits the functioning of both of Plaintiff's upper extremities. (R. at 38.) Dr. Kelley also indicates that Plaintiff can walk less than a city block and has an abnormal gait. (R. at 360-363.) As Defendant points out, there is evidence that Plaintiff has walked four miles, but that statement is qualified because the context of the statement was explaining to his chiropractor how his symptoms began. (R. at 289.)

This, however, leads to a potentially more troubling point. As Defendant concedes, Dr. Kelley's opinion is the only medical opinion in the record evaluating whether Plaintiff's condition meets or is medically equivalent to a Listing. "SSR 96-6p and the regulations imply that an appointed expert must provide the equivalence opinion." *Moran v. Comm'r of Soc. Sec.*, No. 13-cv-13452, 2014 WL 4197366, at *25 (E.D. Mich. Aug. 22, 2014). The reason for this requirement is to ensure that lay ALJs (and federal court judges) refrain from making "complex medical determinations." *Id.* at *26 (E.D. Mich. Aug. 22, 2014); *see also Manson v. Comm'r of Soc. Sec.*, No. 12-11473, 2013 WL 2456960, at *12 (E.D. Mich. July 9, 2013) (remanding because "neither the ALJ nor [the] court possesses the requisite medical expertise to determine if [Plaintiff's] impairments . . . in combination equal one of the Commissioner's listings.") (internal quotations omitted).

21

In light of this requirement, the Eastern District of Michigan has consistently held that "'longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence of the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight.'" *Fowler v. Comm'r of Soc. Sec.*, No. 12-12637, 2013 WL 52372883, at *12 (E.D. Mich. Sept. 25, 2013) (quoting SSR 96-60, 1996 WL 374180, at *3); *see also Yahya v. Comm'r of Soc. Sec.*, No. Civ. A. 13-12054, 2014 WL 1776006, at *12 (E.D. Mich May 5, 2014) (remanding for "overall lack of medical expert opinion evidence."); *Trainor v. Comm'r of Soc. Sec.*, No. 13-10093, 2014 WL 988993, at *25 (E.D. Mich. Mar. 13, 2014) (same); *Klink v. Comm'r of Soc. Sec.*, No. 12-15172, 2014 WL 902707, at *10 (E.D. Mich. Mar. 7, 2014) (remanding where a lay review of the record "suggests it is at least plausible that Plaintiff's impairments could medically equal" a Listing.).

Here, the ALJ's cursory explanation for his discounting of Listing 1.02 and complete failure to make even a passing reference to Listing 1.03, in addition to the lack of evidence in the record as to whether Plaintiff's condition meets or medically equals a Listing, does not provide the Undersigned with sufficient information to perform a meaningful judicial review. A review of the entire record indicates, in the opinion of this layperson, that it is plausible that Plaintiff's

22

impairments could medically equal a Listing impairment.  Accordingly, I
recommend that the Court remand the case to the Commissioner with instructions
to further develop the record on this issue.

### b.    The ALJ's Obesity Analysis

Plaintiff asserts that the ALJ failed to consider his obesity when determining
his RFC.  Neither party disputes Plaintiff's obesity, although Defendant notes that
Plaintiff "barely qualifies as obese."  (DE 15 at 18.)  Nevertheless, the ALJ
concluded that obesity was one of Plaintiff's severe impairments.  (R. at 14.)

When obesity is at issue, an ALJ need not employ a "particular mode of
analysis" when considering its impact.  *Bledsoe v. Barnhart*, 165 F. App'x 408,
411-12 (6th Cir. 2006).  The ALJ must, however, "consider the claimant's obesity
in combination with other impairments at all stages of the sequential evaluation."
*Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009).  While there
is no longer a Listing for obesity, "obesity may increase the severity of coexisting
or related impairments to the extent that the combination of impairments meets the
requirements of a listing."  S.S.R. 02-1P.  Specifically, "someone with obesity and
arthritis affecting a weight-bearing joint may have more pain and limitation than
might be expected from the arthritis alone."  Id.

The burden is on Plaintiff to show specifically "how the obesity, in
combination with other impairments, limited her [or his] ability to a degree

23

inconsistent with the ALJ's RFC determination." *Smith v. Astrue*, 639 F. Supp. 2d 836, 846-47 (6th Cir. 2009). Here, as support for his proposition, Plaintiff describes Dr. Kelley's note that his "obesity effects the patient by some increase in pain." (DE 14 at 21.) Plaintiff fails to point to any other evidence that his obesity significantly exacerbated his other impairments or that any resulting limitations were greater than those opined by the ALJ in his RFC assessment. Nor did Plaintiff testify to the effects of his obesity at the hearing. *See, e.g., Griffith v. Comm'r of Soc. Sec.*, No. Civ. A. 12-10579, 2014 WL 1213257, at *19 (E.D. Mich. Feb. 14, 2014) *report and recommendation adopted*, No. 12-15079, 2014 WL 1224807 (E.D. Mich. Mar. 24, 2014) (noting that Plaintiff's failure to testify about the limiting effects of obesity provided was evidence supporting the ALJ's limited consideration). However, given the specific notation in the Regulations about the potential for obesity to exacerbate arthritis in the knee, the Undersigned recommends that, upon remand, the ALJ be directed to certify that he has fully considered Plaintiff's obesity and its effects "in combination with other impairments," in compliance with Social Security Regulation 02-1P. *See Nejat*, 359 F. App'x at 577.

### c.   Weighing of Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(d). The regulations define

24

medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 CFR § 404.1527(e)(2)(i). The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements, specifically:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and

> the specialization of the treating source—in determining what
> weight to give the opinion.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice

of determination or decision for the weight [the ALJ] give[s] [the claimant's]

treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's

reasoning "must be sufficiently specific to make clear to any subsequent reviewers

the weight the adjudicator gave to the treating source's medical opinion and the

reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL

1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States

Court of Appeals for the Sixth Circuit has stressed the importance of the good-

reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants
> understand the disposition of their cases," particularly in situations
> where a claimant knows that his physician has deemed him
> disabled and therefore "might be especially bewildered when told
> by an administrative bureaucracy that she is not, unless some
> reason for the agency's decision is supplied." *Snell v. Apfel*, 177
> F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the
> ALJ applies the treating physician rule and permits meaningful
> review of the ALJ's application of the rule. *See Halloran v.
> Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly

important when the treating physician has diagnosed the claimant as disabled."

26

*Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008)

(citing *Rogers*, 486 F.3d at 242).

Plaintiff argues that the ALJ improperly weighed Dr. Kelley's opinion.

Plaintiff points out that the State Agency did not have his medical records

reviewed by a doctor or refer Plaintiff for a consultative examination.  According

to Plaintiff, that leaves Dr. Kelley in the "best position to judge the limitations

caused by the conditions for which he treated" him.  (DE 16 at 4.)  Plaintiff asserts

that the limitations opined by Dr. Kelley are consistent with the medical evidence

in the record, including the x-ray findings, Dr. Henning's examination, and Dr.

Shaikh's assessment of Plaintiff's condition.  Dr. Kelley was Plaintiff's treating

orthopedist from April 2011 through August 2012.  (R. at 360.)  Defendant asserts

that the ALJ afforded proper weight to Dr. Kelley's opinion and that his reasons

for doing so were supported by substantial evidence.  In support of her position,

Defendant points out inconsistencies between Plaintiff's testimony, Dr. Kelley's

notes, and the record evidence.

Such an analysis, however, brings the Court back to the fact that there is no

evidence of a consultative examination (as is required for *Listing purposes*), and no

State Agency reviewer examined Plaintiff's records.  Although such an evaluation

is not required for the purposes of *determining the weight* afforded to a treating

physician, the record in this case is undeveloped, making the ALJ's weighing of

opinion evidence incapable of meaningful judicial review.[3]  To the extent possible,

the ALJ did provide good reasons for discounting Dr. Kelley's opinions as

inconsistent with his own treatment notes and inconsistent with the record as a

whole.  *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009)

(an ALJ's finding that a medical opinion conflicts with other evidence in the record

is sufficient to discount the opinion.).  However, the record will not be fully

developed until a consultative examination is obtained, and Dr. Kelley's opinions

remain the only opinion evidence in the record in some areas.  When the record is

fully developed in accordance with the instructions above, I recommend that the

ALJ be required to fully consider Dr. Kelley's conclusions in combination with

any additional opinion evidence provided by a consultative examiner.

### G.   CONCLUSION

Due to the errors outlined above, Plaintiff is entitled to an order remanding

this case to the Social Security Administration pursuant to Sentence Four of 42

U.S.C. § 405(g).  Accordingly, the Undersigned **RECOMMENDS** that the Court

**GRANT** Plaintiff's motion for summary judgment (DE 14), **DENY** Defendant's

motion for summary judgment (DE 15), **REVERSE** the Commissioner of Social

---

[3] Although a consultative evaluation is necessary for the purpose of determining
whether Plaintiff's impairments meet or medically equal a Listing, and not for the
purpose of evaluating the ALJ's assignment of weight to opinion evidence, the
completion of the record for the former, as is recommended above, will
undoubtedly be helpful in analysis of the latter.

Security's non-disability finding, and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: May 20, 2015                    s/Anthony P. Patti
                                        Anthony P. Patti
                                        UNITED STATES MAGISTRATE JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on May 20, 2015, electronically and/or by U.S. Mail.

                                        s/Holly Monda
                                        Case Manager, in the absence of
                                        Michael Williams